607 A.2d 321

**Max L. STARR, Petitioner,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1991.

Decided April 10, 1992.

198

Cleveland C. Hummel, for petitioner.

Dennis A. Whitaker, Asst. Counsel, for respondent.

Before PALLADINO and SMITH, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Max L. Starr petitions for review of the order of the Environmental Hearing Board (Board) which sustained the order of the Department of Environmental Resources (DER) filed pursuant to the Solid Waste Management Act (Act)[1] and Section 1917–A of The Administrative Code of 1929.[2] DER's order charged, inter alia, that Starr was operating a waste storage and disposal facility without a permit in violation of the Act in that tires collected by Starr from various commercial tire dealers were stored on Starr's property in a manner which resulted in the creation of a public nuisance and storm water problems. The order directed Starr to cease accepting tires at the site; to document the total number of tires; to submit copies of pertinent contracts relating to the recovery or removal of the

1. Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

2. Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 510–17.

tires; and to submit either a permit application or closure plan for the facility.

Starr owns approximately four hundred and fifty acres of rural land in Greenwood Township, Columbia County, and is engaged in the trucking business. Since 1981, Starr has been collecting discarded tires from various commercial tire dealers who paid Starr to dispose of the tires, brought in by tractor-trailer and randomly dumped on the surface of the ground in two large piles adjacent to one another and one smaller pile nearby. There is no fence surrounding the tires. By January 3, 1986, approximately two to five million tires had accumulated, and Starr has never received a permit or approval from DER for the storage or disposal of tires at the site.

On January 10, 1986, DER issued a notice of violation to Starr that a written proposal was to be submitted to DER within ninety days for the closure or permitting of the site. On May 10, 1987, DER issued its closure order which Starr appealed to the Board. At the time of the Board's February 19, 1989 hearing, there were approximately 5.9 million tires in the two large piles which had a total area of eleven acres. In dismissing Starr's appeal, the Board held that the discarded tires constituted "solid waste" under the Act; that the tires were retained directly on the surface of the ground and were either "stored" or "disposed" of; and that since those tires remained on the land for over a year, they are presumed to be disposed of pursuant to Section 103 of the Act, 35 P.S. § 6018.103.[3]

**3.** Section 103 of the Act defines "storage" as:
The containment of any waste on a temporary basis in such a manner as not to constitute disposal of such waste. It shall be presumed that the containment of any waste in excess of one year constitutes disposal. This presumption can be overcome by clear and convincing evidence to the contrary.
That Section defines "disposal" as:
The incineration, deposition, injection, dumping, spilling, leaking, or placing of solid waste into or on the land or water in a manner that the solid waste or a constituent of the solid waste enters the environment, is emitted into the air or is discharged to the waters of the Commonwealth.

Issues raised by Starr before this Court are whether the Board erred in concluding that the tires are "municipal waste," are "contained" for purposes of applying the definition of "storage," and that the accumulation falls within the statutory presumption of "disposal" as defined in Section 103 of the Act; whether the Board erred in concluding that the administrative law judge properly excluded evidence offered by Starr regarding his actions taken after the order was issued by DER; and whether the statutory presumption of "disposal" under Section 103 is constitutional.

 At the outset, this Court's scope of review of an Environmental Hearing Board decision is limited to a determination of whether an error of law has been committed, constitutional rights have been violated, or any findings of fact are unsupported by substantial evidence. *Mathies Coal Co. v. Department of Environmental Resources*, 522 Pa. 7, 559 A.2d 506 (1989). Furthermore, a reviewing court may interfere in an agency decision only when there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. *Slawek v. State Board of Medical Education & Licensure*, 526 Pa. 316, 586 A.2d 362 (1991). Moreover, the construction given a statute by those charged with its execution and application is entitled to great weight and should not be disregarded unless it is clear that the agency's interpretation is incorrect. *T.R.A.S.H., Ltd. v. Department of Environmental Resources*, 132 Pa.Commonwealth Ct. 652, 574 A.2d 721, *appeal denied*, 527 Pa. 659, 593 A.2d 429 (1990); *Slovak–American Citizens Club of Oakview v. Pennsylvania Liquor Control Board*, 120 Pa.Commonwealth Ct. 528, 549 A.2d 251 (1988).

 Starr first contends that the Board erred in concluding that the tires were "municipal waste" under Section 103 of the Act.[4] The Board determined that the discarded

---

4. "Municipal waste" is defined in relevant part: "Any garbage, refuse, industrial lunchroom or office waste and other material including solid ... material resulting from operation of residential, municipal,

tires were obtained from tire dealers and were therefore waste material resulting from the operation of a commercial establishment. The Board further defined "waste" as material discarded as worthless or of no use, and reasoned that the tires were thus "waste" when Starr collected them from the tire dealers. Starr argues that the tires are not waste because they are a marketable commodity capable of being profitably recycled for various further uses. As the Board observed, the fact that the discarded tires may have value to Starr does not mean that they are not "waste."

Starr's value-based analysis falters in at least two respects. First, it ignores the express legislative policy in the Act to correct "improper and inadequate solid waste practices [which] create public health hazards, environmental pollution...." 35 P.S. § 6018.102.[5] Testimony showed that the tires pose a fire danger and harbor mosquitoes and other insects, thus constituting a public health hazard. Second, the value-based analysis ignores the absurd result that a party could escape environmental regulations by simply declaring his waste has value.[6] Accordingly, the Board properly found that the tires on Starr's property were municipal waste and subject to regulation.

■ Similarly, the Board properly determined that the tires were initially "stored" within the meaning of the Act. Starr argues that the tires were not "contained" and therefore were not "stored," suggesting that "containment" involves a situation where liquid or degradable solid waste materials are placed in some type of vessel for eventual transshipment to a disposal site. This, however, was not

commercial or institutional establishments and from community activities...." 35 P.S. § 6018.103.

**5.** *See also* 25 Pa.Code § 75.28(a) which provides: "The storage of all solid waste shall be practiced so as to prevent the attraction, harborage or breeding of insects or rodents and to eliminate conditions which are harmful to public health or which create safety hazards, odors, unsightliness and public nuisances."

**6.** *See* 1 Pa.C.S. § 1922(1) which provides that in ascertaining the legislative intent in the enactment of a statute, this Court may apply the presumption that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable.

the interpretation adopted by the Board. As "containment" is not defined in the Act, the Board must construe statutory language in accordance with its common and approved usage. *Kwalwasser v. Department of Environmental Resources*, 131 Pa.Commonwealth Ct. 77, 569 A.2d 422 (1990). The Board relied upon the dictionary meaning of "contain," which is "to keep within limits." Webster's Ninth New Collegiate Dictionary (1987). This definition clearly contemplates the keeping of the tires in discrete piles directly on the ground within the confines of Starr's property.

■ Likewise, the Board properly concluded that the accumulation of tires falls within the statutory presumption of "disposal" in Section 103 of the Act. Again, applying its definition of "containment," the Board determined that the majority of the tires remained at the site for over one year, thus triggering the presumption unless rebutted by clear and convincing evidence to the contrary. Starr presented no such evidence, and thus did not overcome the presumption.

■ Starr next contends that the administrative law judge improperly excluded evidence offered by Starr relating to his efforts made after DER's order to obtain a permit to shred or otherwise process the accumulated tires. Starr maintains that such evidence was necessary to rebut the Section 103 presumption of "disposal" because it would prove that he intended to utilize the tires and not to store or dispose of them. The fundamental consideration in determining the admissibility of evidence is whether that evidence is relevant to the fact sought to be proved. *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983). The issue before the Board was whether DER properly issued its order on May 1, 1987. To rebut the presumption of disposal, Starr was entitled to present evidence as to what actions he took prior to the order. Measures taken after the order are irrelevant to determining whether the Department properly issued its order. At the time of issuance of the order, Starr was either storing or disposing of solid waste on his

property. Hence, the administrative law judge properly excluded Starr's proffered evidence.

Starr last argues that the statutory presumption of "disposal" established under Section 103 of the Act is unconstitutional in that it is arbitrary and is not rationally related to the avowed objective of protecting the environment from the effects of disposal of solid waste. It must be initially noted that the burden of proving that a statute is unconstitutional is on the challenger. *Satinoff v. Commonwealth*, 128 Pa.Commonwealth Ct. 93, 562 A.2d 996 (1989). A presumption of constitutionality attaches to any lawfully enacted legislation and, in the event a party challenges that legislation, the party must meet the burden of rebutting the presumption by a clear, palpable, and plain demonstration that the legislation violates a constitutional provision. *James v. Southeastern Pennsylvania Transportation Auth.*, 505 Pa. 137, 477 A.2d 1302 (1984). Furthermore, any doubts as to the statute's constitutionality are to be resolved in favor of sustaining the statute. *Parker v. Department of Labor and Industry*, 115 Pa.Commonwealth Ct. 93, 540 A.2d 313 (1988), *aff'd*, 521 Pa. 531, 557 A.2d 1061 (1989). Moreover, a classification implicating neither suspect classes nor fundamental rights will be sustained if it bears some rational relationship to a valid state objective. *James; Parker.*

In short, Starr contends that "storage" and "disposal" are mutually exclusive concepts as defined under the Act because the essential characteristic of waste "disposal" is that the waste or constituent thereof enters the environment, which is clearly incompatible with the "containment" of waste on a temporary basis which must be found for the presumption to apply. Beyond this, Starr presents no authority for his conclusions, nor does he offer any argument sufficiently compelling to overcome his heavy burden of proof. It is clear that the statutory presumption of "disposal" bears a rational relationship to a valid state objective.

First, there is the express legislative intent to "protect the public health, safety and welfare from the short and

long term dangers of transportation, processing, treatment, storage, and disposal of all wastes." 35 P.S. § 6018.102(4). The statutory presumption is appropriate because at some point the storage of waste materials becomes disposal, especially when there is no other disposition in the foreseeable future. As observed by the Board, the one year provision is reasonable because at that point "storage becomes merely a sham to avoid the more extensive—and expensive—requirements pertaining to disposal." Board Opinion, p. 10. The presumption supports the valid state objective of requiring permits for disposal in order to protect the public health, safety and welfare from the long-term dangers of unregulated storage of all waste. Accordingly, the Section 103 statutory presumption regarding "disposal" is not violative of any constitutional provision.

The Board's order is therefore affirmed.

## ORDER

AND NOW, this 10th day of April, 1992, the order of the Environmental Hearing Board is affirmed.